**ROCKWOOD MANUFACTURING CORP., Plaintiff-Appellant,**

v.

**AMP, INC., Defendant-Appellee.**

**No. 85–2784.**

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1986.

Decided Nov. 25, 1986.

As Amended Dec. 3, 1986.

Robert E. Poynter, Bennett, Boehning, Poynter & Clary, Lafayette, Ind., for plaintiff-appellant.

Charles E. Greer, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendant-appellee.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and MAROVITZ, Senior District Judge.*

CUMMINGS, Circuit Judge.

This case comes to us on appeal following the district court's grant of defendant AMP, Inc.'s ("defendant's") motion for summary judgment.[1] This diversity suit requires us to examine an issue of contract formation under the law of Indiana. For the reasons set forth below, we affirm the decision of the district court.

I

Defendant is a New Jersey corporation that produces electrical components and develops machines to be used by manufacturers. Plaintiff Rockwood Manufacturing Corp. ("plaintiff") is an Indiana corporation that manufactures wire-wound resistors for sale throughout the United States and in a few foreign countries.

The parties entered into discussions during 1976 regarding plaintiff's leasing of a wire-wound resistor assembly machine from defendant. On September 27, 1976, defendant mailed a quotation to plaintiff. It provided in part as follows:

> This quotation is provided for information purposes only and shall not be construed as an offer to sell, and is subject to change without notice. All orders are subject to acceptance by [defendant] in accordance with its standard acknowledgment form.

On November 12, 1976, plaintiff responded by sending defendant a purchase order for leasing a machine. This purchase order referenced and incorporated defendant's September 27, 1976, quotation, including the $14,000 partial preparation charge required thereby. This purchase order was modified by deleting certain requirements regarding military specifications and resubmitted to defendant on March 16, 1977. On April 4, 1977, plaintiff sent a purchase order for the lease of a second machine. On April 8, 1977, plaintiff sent defendant a $14,000 check as partial payment on the first machine. This check was promptly cashed by defendant, and it cleared plaintiff's bank on April 18, 1977. Three days later defendant sent plaintiff the acknowledgment form that was referred to in defendant's initial quotation, which had been incorporated by plaintiff on November 12, 1976. This form disclaimed certain warranties and limited the remedies available to plaintiff. An invoice sent to plaintiff on April 29, 1977, contained the same conditions.

Defendant delivered the first machine to plaintiff on February 20, 1978. Plaintiff subsequently contended that the machine did not function properly and returned it to defendant in the spring of 1978 for further development. Thereafter, plaintiff was under the impression that defendant was attempting to develop the machine in order to meet the agreed-upon specifications. However, defendant did not so develop the machine, and on January 19, 1980, it notified plaintiff that it was discontinuing its efforts to develop it. The second machine was never sent to plaintiff.

Plaintiff filed suit against defendant in January 1983. Plaintiff's complaint alleged breach of express contract in Count I and breach of implied in fact contract as

* The Honorable Abraham L. Marovitz, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. Although Count I of the complaint remains to be tried, we have jurisdiction because leave to appeal was granted pursuant to 28 U.S.C. § 1292(b).

well as breach of various express and implied warranties in the remaining four Counts. The district court determined that the Uniform Commercial Code ("UCC") did not apply to this transaction, and on this basis granted summary judgment for defendant on Counts II, III and V that alleged breach of UCC warranties.

The district court then turned to an analysis of the agreement between the parties. The court determined that a contract did exist. The court further determined that defendant's act of cashing the $14,000 check sent by plaintiff did not operate as an acceptance of plaintiff's offer in the form of the modified purchase order submitted March 16, 1977. Thus, as of April 21, 1977, defendant had not yet accepted plaintiff's order. As a result, the acknowledgment form sent by defendant on April 21, 1977, along with the invoice of April 29, 1977, functioned as a counter-offer because they contained terms that were not a part of plaintiff's offer. This counter-offer was accepted by plaintiff when it accepted delivery of the first machine and failed to object to the terms of the acknowledgment form.

The court's decision that an express contract existed containing defendant's acknowledgment form led to several significant conclusions. First, since there can be no implied contract where an express contract exists between the same parties regarding the same subject matter, the court granted summary judgment to defendant on Count IV which alleged breach of an implied in fact contract. Second, and of more significance for this appeal, the court concluded that the terms in defendant's acknowledgment form limited plaintiff's remedy to the return of funds paid to defendant. The court therefore stated that the case was to be continued on Count I which alleged breach of an express contract, but with its remedy limited to a refund of amounts paid under the lease.

## II

The crucial issue in this case, and the only issue validly pressed on appeal by plaintiff, is whether the terms of defend-

ant's April 21 acknowledgment form are part of the contract between the parties. This in turn depends upon whether defendant's act of cashing plaintiff's $14,000 check, tendered as payment of a partial preparation charge, constituted an acceptance of plaintiff's offer. As the district court accurately noted, if this conduct constituted an acceptance, then the subsequent sending by defendant of its acknowledgment form is of no effect since it occurred after the completed formation of the contract. However, if this conduct did not constitute an acceptance, then the subsequent sending by defendant of its acknowledgment form could properly be considered a counter-offer, since Indiana follows the common law rule that a purported acceptance which is not the mirror image of the original offer functions as a counter-offer. *Kokomo Veterans, Inc. v. Schick,* 439 N.E.2d 639, 644 (Ind.Ct.App.1982); *Uniroyal, Inc. v. Chambers Gasket & Mfg. Co.,* 177 Ind.App. 508, 512, 380 N.E.2d 571, 575 (1978); *Gerardot v. Emenhiser,* 173 Ind. App. 353, 358, 363 N.E.2d 1072, 1076 (1977). Under this latter scenario, subsequent conduct by plaintiff would then constitute an acceptance, and the contract would include the limiting terms of defendant's acknowledgment form.

As a general matter under Indiana law an offer may be expressed by acts which manifest acceptance. *Carr v. Hoosier Photo Supplies,* 441 N.E.2d 450, 453 (Ind. 1982); *State of Indiana v. Daily Express, Inc.,* 465 N.E.2d 764, 767 (Ind.Ct.App.1984); *Herald Tel. v. Fatouros,* 431 N.E.2d 171, 174 (Ind.Ct.App.1982); *Young v. Bryan,* 178 Ind.App. 702, 705, 368 N.E.2d 1, 3 (1977). See generally Restatement (Second) of Contracts § 69(2) (1981); E.A. Farnsworth, Contracts § 3.15 (1982). Although Indiana does not appear to have decided the precise issue, several courts in other jurisdictions have built upon this concept and held that the act of cashing a check can function as an acceptance of an offer in certain circumstances. See, *e.g., Crouch v. Marrs,* 199 Kan. 387, 430 P.2d 204 (1967); *Prince Enterprises v. Griffith*

*Oil Co.,* 8 Kan.App.2d 644, 664 P.2d 877 (1983) (acceptance where party deposited rental check); *Rosenberg v. Townsend, Rosenberg & Young, Inc.,* 376 N.W.2d 434 (Minn.Ct.App.1985) (acceptance of settlement offer where check was retained for eighteen months without notifying other party that check would not be accepted as payment in full); *Bestor v. American Nat'l Stores,* 691 S.W.2d 384 (Mo.Ct.App. 1985) (acceptance where initial check was retained for eight years and subsequent checks were cashed); *Hoffman v. Ralston Purina Co.,* 86 Wis.2d 445, 273 N.W.2d 214 (1979) (acceptance where check was retained for seven months, with silence). But see *Houston Dairy, Inc. v. John Hancock Mutual Life Ins. Co.,* 643 F.2d 1185 (5th Cir.1981) (no acceptance; offeror did not have notice that offeree had cashed offeror's cashier's check); *Empire Mach. Co. v. Litton Business Tel. Sys.,* 115 Ariz. 568, 566 P.2d 1044 (Ct.App.1977) (no acceptance where mere retention of check; cashing of check raises an issue of fact as to acceptance); *Hermes v. William F. Meyer Co.,* 65 Ill.App.3d 745, 22 Ill.Dec. 451, 382 N.E.2d 841 (1978) (no acceptance; check retained but apparently never cashed).

Although the cashing of a check may or may not generally constitute an acceptance under Indiana law, certain facts in the instant case render this conduct an impermissible means of acceptance. Under Indiana law, an offeror is master of his offer, and as such he may prescribe the mode in which an acceptance must be made. *Foltz v. Evans,* 113 Ind.App. 596, 604, 49 N.E.2d 358, 361–362 (1943). This maxim of contract law is generally followed in other jurisdictions as well. See, *e.g., Golden Dipt Co. v. Systems Eng'g & Mfg. Co.,* 465 F.2d 215, 216–217 (7th Cir.1972); *Lomas & Nettleton Co. v. United States,* 1 Cl.Ct. 641, 644 (1982); *Overman v. Brown,* 220 Neb. 788, 372 N.W.2d 102, 105 (1985); *Town of Lindsay v. Cooke County Elec. Coop. Ass'n,* 502 S.W.2d 117, 118 (Tex. 1973), certiorari denied, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559; *Nelson, Inc. v. Sewerage Comm'n,* 72 Wis.2d 400, 419, 241 N.W.2d 390, 400 (1976). See generally Re-

statement (Second) of Contracts § 30(1) (1981); E.A. Farnsworth, Contracts § 3.13 (1982).

In the instant case, plaintiff's offer to defendant effectively prescribed that defendant's standard acknowledgment form was the appropriate mode of acceptance. Defendant's quotation that was sent to plaintiff on September 27, 1976, contained this prescription. Plaintiff subsequently incorporated this quotation in the purchase order that it sent to defendant. Moreover, in its response to defendant's requests for admissions, plaintiff admitted that defendant's quotation of September 27, 1976, was part of the written agreement between the parties. Additionally, in its brief plaintiff did not deny defendant's argument that plaintiff's offer to defendant in the form of its purchase order incorporated the quotation of September 27, 1976, with its restriction on permissible modes of acceptance. Nor are we persuaded that any subsequent conduct by defendant amounted to a waiver of this restriction which had been incorporated into plaintiff's offer.

The offer in the instant case therefore prescribed the permissible method of acceptance. Although defendant's act of cashing plaintiff's check might be deemed an acceptance in certain circumstances, it did not meet the prescription contained in the offer and hence was not an acceptance in the instant case. The district court was thus correct in its conclusion that defendant's acknowledgment form and invoice were a part of the express contract between the parties, so that plaintiff's only remaining remedy thereunder is for a refund of the money paid under the lease. All evidence indicates that the parties freely and voluntarily accepted the acknowledgment form's limitations on liabilities and remedies; there is no reason not to give full effect to this language. Unlike *Weaver v. American Oil Co.,* 257 Ind. 458, 276 N.E.2d 144 (1971), relied on by plaintiff, the instant case does not feature a limitation of liability clause imposed by a stronger party upon a party with lesser

bargaining power so as to render the clause unconscionable.

Plaintiff claims that if defendant's cashing of its check did not constitute an acceptance, then it was an act of conversion. Regardless of the merits of this argument, it is not properly before us. There is no evidence that plaintiff ever raised this issue below. Plaintiff's complaint based its prayers for relief only on breach of contract and warranty; plaintiff never stated a cause of action based on the tort of conversion. Nor was the issue raised in plaintiff's answering brief to defendant's motion for summary judgment. Not surprisingly, the district court never addressed the issue. The issue is therefore deemed to have been waived for purposes of this appeal. *Gehl Co. v. Commissioner*, 795 F.2d 1324, 1331 (7th Cir.1986).

The district court's grant of defendant's motion for summary judgment with respect to all but Count I[2] of plaintiff's complaint is not at issue on this appeal. Both parties agree that given our concurrence with the district court's decision that an express contract exists between the parties, the district court's dismissal of plaintiff's implied contract claim is not at issue. Plaintiff's remaining claims were all based upon UCC warranties, and the dismissal of these claims was a direct result of the district court's decision that the transaction at issue is not governed by the UCC. Plaintiff has failed to raise any argument in its briefs to this Court that the district court's decision regarding the inapplicability of the UCC to the transaction at issue was erroneous. Moreover, plaintiff's brief on appeal never referred to the district court's dismissal of these claims. Plaintiff has therefore waived the propriety of the district court's dismissal of these remaining bases of liability. *National Metalcrafters v. McNeil*, 784 F.2d 817, 825 (7th Cir.1986).

For the reasons stated above, we affirm the decision of the district court, and this cause is remanded for a trial of Count I.

**2.** See *supra* note 1.