**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

ATTORNEY FOR APPELLEES:

**JAY L. LAVENDER**
Lavender & Bauer, P.C.
Warsaw, Indiana

**BRYON J. BERRY**
Warsaw, Indiana

FILED

Jan 12 2012, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT WEYBRIGHT, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 43A03-1105-DR-191 |
| | ) | |
| KATHY WEYBRIGHT, | ) | |
| n/k/a KATHY SCAGGS, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE KOSCIUSKO SUPERIOR COURT
The Honorable Jerry M. Barr, Special Judge
Cause No. 43D01-0506-DR-454

**January 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Respondent Robert Weybright ("Husband") appeals from the trial court's determination that: (1) Appellee-Petitioner Kathy Webright, n/k/a Kathy Scaggs ("Mother") was not in contempt of a court order; (2) he maintain health insurance coverage for the parties' minor daughter, M.W.; (3) he reimburse Mother for certain health insurance and medical expenses; and (4) Mother retain sole custody of M.W. We affirm in part and remand to the trial court with instructions.

## FACTS AND PROCEDURAL HISTORY

Mother and Father were married on April 22, 1995, and one child, M.W., was born during the course of the parties' marriage. Mother and Father separated in 2005. On August 18, 2005, the trial court entered a Provisional Order ("provisional dissolution order"), in which it awarded Mother custody of M.W., granted Father visitation pursuant to the Parenting Time Guidelines, and ordered Father to pay child support and to maintain health insurance coverage for M.W. On September 13, 2007, the trial court entered a Decree for Dissolution of Marriage ("dissolution decree") in which the trial court again granted Mother custody of M.W. and awarded Father 130 overnight visits with M.W. The dissolution decree did not disturb the trial court's prior order regarding Father's obligation to pay child support or maintain health insurance coverage for M.W.

Since 2007, the parties have filed numerous motions regarding custody, child support, and visitation issues. On October 6, 11, and 12, 2010, the trial court conducted a hearing on various pending motions. On January 31, 2011, the trial court issued an order regarding the various pending motions in which the trial court determined that: (1) Mother was not in

2

contempt of the existing visitation order; (2) Mother shall retain custody of M.W. with Father having certain visitation rights as outlined in the order; (3) Father shall maintain health insurance for M.W.; (4) Father shall reimburse Mother for one half of the $19,395.92 in health insurance premiums paid by Mother between January of 2007 and December of 2009, during which time M.W.'s health insurance had lapsed; and (5) Father shall reimburse Mother for one half of the $7,353.98 in medical expenses, including $5500 in orthodontia expenses, incurred for M.W. by Mother.  Father now appeals.

## DISCUSSION AND DECISION

### I.  Contempt

On appeal, Father contends that the trial court abused its discretion in determining that Mother was not in contempt of the visitation order.

> Whether a party is in contempt is a matter left to the sound discretion of the trial court, and we reverse the trial court's finding of contempt only if it is against the logic and effect of the evidence before it or is contrary to law. *Williams v. State ex rel. Harris*, 690 N.E.2d 315, 316 (Ind. Ct. App. 1997). Indirect contempt arises from matters not occurring in the presence of the court but which obstruct or defeat the administration of justice, such as failure or refusal of a party to obey a court order. *Crowley v. Crowley*, 708 N.E.2d 42, 52 (Ind. Ct. App. 1999). The primary objective of a civil contempt proceeding is not to punish but to coerce action for the benefit of the aggrieved party. *Id*. Thus, any type of remedy in a civil contempt proceeding must be coercive or remedial in nature. *Id*.

*Mosser v. Mosser*, 729 N.E.2d 197, 199-200 (Ind. Ct. App. 2000).  When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses, and unless after a review of the entire record we have a firm and definite belief a mistake has been made by the trial court, the trial court's judgment will be affirmed.  *Topolski v.*

*Topolski*, 742 N.E.2d 991, 994 (Ind. Ct. App. 2001) (citing *Piercey v. Piercey*, 727 N.E.2d 26, 31-32 (Ind. Ct. App. 2000)).

Indiana Code section 34-47-3-1 provides that a person who is guilty of any willful disobedience of any order lawfully issued by a court of record is guilty of indirect contempt of the court's order. In order to support a finding of indirect contempt, it must be shown that a party willfully disobeyed a lawfully entered court order of which the offender had notice. *Rendon v. Rendon*, 692 N.E.2d 889, 896 (Ind. Ct. App. 1998) (citing *Mitchell v. Stevenson*, 677 N.E.2d 551, 558 (Ind. Ct. App. 1997)); *see also Topolski*, 742 N.E.2d at 994. An action is "willful" if it is done deliberately. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2617 (14th ed. 1961). The presence of a "willful" intent is a factual determination for the trial court and will be set aside only if there is no evidence supporting the trial court's determination. *See Whitman v. Whitman*, 405 N.E.2d 608, 614 (Ind. Ct. App. 1980).

In the instant matter, the trial court determined that while Mother did "thwart visitation on several occasions," Mother's actions were not willful because she believed she was acting in M.W.'s best interest.[1] Appellant's App. p. 32. Mother testified that she believed she was acting in M.W.'s best interest because of concerns relating to prior allegations of inappropriate touching of minors raised in the CASA report, Father's addiction to pornography, and M.W.'s display of inappropriate affection to both her stepfather and adult male strangers after periods of extended visitation with Father. Mother testified that

---

[1] The trial court cautioned, however, that a continued refusal by Mother to comply with the trial court's order regarding visitation would amount to contempt and would be punished with a fine or incarceration.

4

following extended periods of visitation with Father, M.W. often attempts to climb into stepfather's lap in an inappropriate fashion. M.W. also shows inappropriate displays of affection to strangers, which displays include hugs. In addition, Mother was unable to transport M.W. to visitation on one occasion after suffering injuries in an automobile accident that left her unable to drive. In light of the evidence supporting the trial court's determination that Mother's actions were not willful because she felt she was acting in M.W.'s best interest, we conclude that the trial court acted within its discretion in determining that Mother was not in contempt of the visitation order.

## II. Health Insurance

Father contends that the trial court abused its discretion in ordering him to both continue to carry health insurance for M.W. and to pay additional child support based on health insurance premiums paid after Father previously allowed M.W.'s health insurance coverage to lapse. We review a trial court's decision regarding child support for an abuse of discretion. *Thompson v. Thompson*, 811 N.E.2d 888, 924 (Ind. Ct. App. 2004), *trans. denied.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id*.

In arguing that the trial court abused its discretion in ordering him to reimburse Mother for health insurance premiums paid by Mother, Father argues that he is effectively being forced to pay for M.W.'s health insurance twice. Father's argument seems to be based on the false premise that the trial court has ordered him to pay for two current, ongoing

health insurance policies. Our review of the record, however, reveals that Father has actually been ordered to continue to provide M.W. with current health insurance while reimbursing Mother for a period from January 2007 until December of 2009, when he appears to have failed to provide M.W. with health insurance as ordered by the dissolution order.

The record reveals that pursuant to the provisional dissolution order, which continued to be in effect up through the issuance of the January 31, 2011 order, Father was ordered to carry health insurance for M.W. The record also reveals that Mother was not provided with any documentation verifying that Father had procured health insurance coverage as of 2005 or 2006. As a result, Mother believed that M.W.'s health insurance coverage had lapsed at some point during either 2005 or 2006. In light of the apparent lapse of M.W.'s health insurance coverage and her lack of knowledge as to whether Father had procured health insurance for M.W., Mother felt compelled to procure health insurance coverage for M.W. starting in January of 2007. Mother subsequently became aware that Father had procured health insurance coverage for M.W. beginning in January of 2010.

The total cost for M.W.'s health insurance coverage for January of 2007 through December of 2009 was $19,395.92. The trial court ordered Father to reimburse Mother for one half of the total sum paid by Mother for M.W.'s health insurance coverage between January of 2007 and December of 2009, at a rate of $75 per week in addition to Father's existing child support obligations. In light of the evidence demonstrating that M.W.'s health insurance appears to have lapsed in 2005 or 2006 and the lack of evidence that Father complied with the provisional dissolution order by procuring health insurance for M.W. prior

6

to January 2010, we conclude that the trial court acted within its discretion by ordering Father to continue to provide current health insurance for M.W. while reimbursing Mother for one half of the sum of health insurance premiums paid during the period between January of 2007 and December of 2009.

Furthermore, to the extent that Father argues that the trial court abused its discretion in ordering him to pay one half of the sum of the health insurance premiums paid by Mother between January of 2007 and December of 2009, because Mother failed to request Father's approval of the health insurance coverage obtained by Mother, we disagree. Father claims that Mother should have sought his approval before obtaining the health insurance coverage for M.W. or allowed him the opportunity to procure a health insurance policy of his choice. The record reveals, however, that Father was required by the provisional dissolution order to provide health insurance coverage during this period, but apparently failed to do so. We cannot say that Mother acted unreasonably by procuring health insurance for M.W. through her place of employment in light of Father's failure to comply with the terms of the provisional dissolution order by providing M.W. with health insurance. Thus, it is not an abuse of discretion for the trial court to require Father to reimburse Mother for one half of the total sum of health insurance premiums paid during this period.

### III. Costs Related to Orthodontia

Father also contends that the trial court abused its discretion in ordering that he pay one half of M.W.'s orthodontia expenses. Again, an abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before

7

the court or if the court has misinterpreted the law. *Thompson*, 811 N.E.2d at 924. In support, Father relies on *Tigner v. Tigner*, 878 N.E.2d 324, 329 (Ind. Ct. App. 2007), for the proposition that Mother, as the party seeking to recover the orthodontia expenses, was required to prove that the expenses were both reasonable and necessary. Specifically, Father claims that because orthodontia expenses were not explicitly mentioned in the provisional dissolution order, he should not be required to pay for one half of the costs associated with M.W.'s braces unless the orthodontia was currently medically necessary, as opposed to cosmetic. Father claims that if the orthodontia was cosmetic in nature, it could have been done without consequence in the future.

With regard for the need for M.W.'s orthodontia, Mother testified that the orthodontia was medically necessary because M.W. had two permanent teeth growing in the "roof of her mouth" and that her dentist had indicated that the orthodontia was needed at the current time to make room for and move those teeth to their proper location so to avoid sinus problems and prolonged treatment. Tr. pp. 151, 152. From this testimony, the trial court was within its discretion to determine that M.W.'s orthodontia was medically necessary, and ordered Father to pay for one-half of the total cost of it.

## IV. Bills Discharged in Bankruptcy

Father contends that the trial court erred in ordering him to reimburse Mother for two bills, specifically a $391.50 bill from Goshen General Hospital ("GGH") and a $27.11 bill from EBI. Mother stipulates that Father should not be required to reimburse Mother for these bills. Accordingly, to the extent that these bills were included in the amount of medical

expenses for which the trial court ordered Father to reimburse Mother, we order the trial court to modify its order such that Father is not required to reimburse Mother for the aforementioned bills.

## V. Custody Modification

Father also contends that the trial court abused its discretion in modifying the prior custody determination by awarding sole custody to Mother because Mother failed to prove that a change in circumstances warranted a change in custody and that a change in custody was in M.W.'s best interest. However, upon review, we observe that while the January 31, 2011 order may indicate that it modified the previous custody order by granting Mother sole custody of M.W., the parties' dissolution decree granted Mother sole custody of M.W., with Father receiving 130 overnight visits per year. Accordingly, the trial court did not actually modify the prior custody determination, and as such, did not abuse its discretion in this regard.

## CONCLUSION

In sum, the trial court did not abuse its discretion in: (1) determining that Mother was not in contempt; (2) ordering Father to provide health insurance for M.W.; (3) order Father to reimburse for one half of health insurance premiums paid by Mother after Father allowed M.W.'s health insurance to lapse between January of 2007 and December of 2009; (4) ordering Father to pay one half of M.W.'s orthodontia expenses; and (5) in continuing sole custody of M.W. with Mother, and the trial court's order is affirmed in this regard. However,

9

we remand to the trial court to modify its order to the extent that Father was previously ordered to reimburse Mother for the $391.50 and $27.11 GGH and EBI bills.

The judgment of the trial court is affirmed in part and remanded to the trial court with instructions.

KIRSCH, J., and BARNES, J., concur.