## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 28 2016, 7:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Jerry Dillon<br>Calumet City, Illinois | Gregory F. Zoeller<br>Attorney General of Indiana |
| | Aaron T. Craft<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re Paternity of<br>Jerry Thomas Leber, | September 28, 2016 |
| | Court of Appeals Case No.<br>45A03-1511-JP-2078 |
| Jerry Dillon,<br>*Appellant-Petitioner,* | Appeal from the Lake Superior<br>Court |
| v. | The Honorable Thomas P.<br>Stefaniak, Jr., Judge |
| State of Indiana, and<br>Laurie Leber, | The Honorable Katherine J.<br>Garza, Magistrate |
| *Appellees-Respondents.* | Trial Court Cause No.<br>45D06-0106-JP-429 |

**Robb, Judge.**

# Case Summary and Issues

[1] The relationship between Jerry Dillon ("Father") and Laurie Leber ("Mother") produced one child. In 2005, Father was ordered to pay child support. In 2014, Father filed a petition for modification of child support. The trial court denied Father's petition and found Father to be in contempt of court for failure to pay child support. Father appeals pro se, raising several issues for our review, which we consolidate and restate as: 1) whether the trial court abused its discretion in granting Mother's motion to compel discovery; 2) whether the trial court abused its discretion in granting the State's petition for contempt; and 3) whether the trial court correctly applied Indiana law in denying Father's petition to modify. Concluding the appeal is untimely, but that regardless, the trial court did not abuse its discretion, we affirm.

# Facts and Procedural History

[2] Father and Mother are the parents of a single child.[1] Father is a dentist and has operated a dental practice in Calumet City, Illinois, under various limited liability companies since 1989. Mother works and resides in Hammond, Indiana. In 2005, the trial court ordered Father to pay $168.80 per week in child support plus an additional amount toward an arrearage, for a total of

---

[1] Their child was born in 1996 and is now emancipated.

$270.00. In 2007, Father filed a petition for modification of child support, which remained unaddressed until 2014.

[3] In April 2014, Father filed another petition to modify child support, seeking retroactive modification to 2007, when he originally filed his request for modification. One month later, Father filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois.[2] In October 2014, the trial court granted a temporary modification, reducing Father's child support to $150 per week pending a final hearing. The final hearing was set for November 2014, but because of Father's non-compliance with multiple discovery orders, the hearing was not completed until June 2015. In March 2015, the State of Indiana intervened and filed a petition for contempt against Father for delinquent child support payments of $89,144.

[4] The trial court held a final hearing on Father's petition for modification and the State's petition for contempt in June 2015. On July 15, 2015, the trial court issued its order denying Father's petition for modification and finding Father's child support arrearage to be $86,910.90. The trial court also found Father in contempt of court and committed him to 180 days in the Lake County Work Release Program. However, the trial court stayed its commitment order, providing Father an opportunity to purge himself of contempt by paying $5,000 by September 3, 2015.

---

[2] The bankruptcy court dismissed Father's case on May 27, 2015.

[5]     A status hearing was held on September 3, 2015 to determine whether Father purged himself of contempt. Father failed to appear at the hearing and later claimed he never received notice of the trial court's July 15 order, although at the time of the hearing he had paid $2,500 of the amount required to purge himself of contempt. Since Father only paid one-half of the amount required to purge himself of contempt, the trial court issued a bench warrant for his arrest.

[6]     On September 14, 2015, Father filed an emergency motion to quash the bench warrant and correct error. The trial court held a hearing on the motion on October 19, 2015, determined Father purged himself of contempt by paying the entire $5,000, and vacated Father's commitment to the Lake County Work Release Program. Father also filed a motion for a new trial at the hearing, which the trial court denied on October 21, 2015. Father filed a notice of appeal with the trial court on November 2, 2015; however, no notice of appeal was filed with the Clerk of the Supreme Court, Court of Appeals, and Tax Court until November 25, 2015.

# Discussion and Decision

## I. Timeliness

[7]     We first address the State's request to dismiss Father's appeal as untimely. Indiana Rule of Appellate Procedure 9(A) provides that a party initiates an appeal from a final judgment or order by filing a notice of appeal with the Clerk of the Indiana Supreme Court, Court of Appeals, and Tax Court within thirty days after the entry of the final judgment is noted in the Chronological Case

Summary ("CCS").[3]  "Unless the Notice of Appeal is timely filed, the right to appeal shall be forfeited . . . ."  Ind. Appellate Rule 9(A)(5).  A party who has forfeited his or her right to appeal by failing to file a timely notice of appeal may have that right to appeal restored only if there are "extraordinarily compelling reasons why this forfeited right should be restored."  *In re Adoption of O.R.*, 16 N.E.3d 965, 971 (Ind. 2014).

[8]  Here, the trial court issued its final judgment on July 15, 2015, and the order was entered on the CCS the same day.  Thus, Father's notice of appeal or a motion to correct error was due by August 14, 2015.  *See* Ind. Trial Rule 59(C).  Father did not file his motion to correct error until September 14, 2015, and did not file his notice of appeal until November 25, 2015.[4]

[9]  However, Father argues he never received notice of the trial court's July 15, 2015, order.  Indiana Trial Rule 72(E) addresses this specific situation:

> *Lack of notice*, or the lack of the actual receipt of a copy of the entry from the Clerk *shall not affect the time within which to contest the ruling, order or judgment*, or authorize the Court to relieve a party of the failure to initiate proceedings to contest such ruling, order or judgment, *except as provided in this section*. *When service of a*

---

[3] The timely filing of a motion to correct error extends a party's time to file a notice of appeal.  An appeal may be initiated by filing a notice of appeal within thirty days after a motion to correct error is deemed denied.  Ind. Trial Rule 53.3(A).

[4] Father's notice of appeal reflects the "Order being Appealed" is the trial court's denial of his motion for a new trial on October 21, 2015.  Father's notice of appeal also lists the date the trial judge approved the order as July 15, 2015.  *See* Appendix of Appellee State of Indiana at 66-72.  Regardless, even if we assume October 21, 2015 is the final judgment for purposes of initiating the appeal, his notice of appeal would have been due by November 20, 2015.

*copy of the entry by the Clerk is not evidenced by a note made by the Clerk upon the Chronological Case Summary, the Court, upon application for good cause shown, may grant an extension of any time limitation* within which to contest such ruling, order or judgment to any party who was without actual knowledge, or who relied upon incorrect representations by Court personnel. Such extension shall commence when the party first obtained actual knowledge and not exceed the original time limitation.

(Emphasis added.) Our review of the CCS reveals no entry by the Clerk that service was made to Father. However, our review of the record also reveals Father made no motion to extend his time to appeal the order. We recognize the limitations a pro se litigant may have; however, such litigants are held to the same standards as trained counsel. *Gunashekar v. Grose*, 915 N.E.2d 953, 955 (Ind. 2009).

[10] Father's failure to timely file a notice of appeal from the trial court's order forfeited his right to appeal absent "extraordinarily compelling reasons." *In re Adoption of O.R.*, 16 N.E.3d at 971. Father does not offer, and we are unable to find, any extraordinarily compelling reasons. Therefore, this appeal is untimely. However, given our long-standing preference for deciding cases on the merits, we will consider Father's arguments. *See Teaching Our Posterity Success, Inc. v. Ind. Dep't of Educ.*, 20 N.E.3d 149, 154 (Ind. 2014).

## II. Discovery

[11] A trial court has broad discretion when ruling on issues of discovery, and we will reverse a trial court's ruling on discovery matters only where the court has

abused that discretion. *Turner v. Boy Scouts of Am.*, 856 N.E.2d 106, 112 (Ind. Ct. App. 2006). An abuse of discretion occurs when the trial court's decision is against the logic and circumstances of the case. *Id.* In general, a party may obtain discovery regarding any matter relevant to the subject matter of the case, or which appears reasonably calculated to lead to the discovery of admissible evidence. *See* Ind. Trial Rule 26(B)(1).

[12] Father appears to argue the trial court abused its discretion by granting Mother's motion to compel discovery, while denying his motion.[5] The underlying discovery dispute between the parties concerned Father's total income. Throughout the modification proceedings, Father asserted his income was $54,000 per year.[6] Mother disputed this number, claiming Father shielded his income by having his various dental practices and limited liability companies pay for his lifestyle and living expenses, and then refused to provide information regarding his dental practices and various companies in discovery.

---

[5] We note the current litigation began because Father filed a petition to modify child support. Father then refused to comply with the trial court's discovery orders, making the process of determining whether support should be modified extremely difficult. As of the final hearing in June 2015, Father still had not fully complied with the trial court's orders. For example, at a March 12, 2015 status hearing, the trial court exhaustively explained to Father that financial information regarding his dental practices and limited liability companies is relevant to his total income and gave him thirty days to comply with all interrogatories and requests for production. On April 12, 2015, despite the trial court's discovery ruling, Father responded to Mother's interrogatory regarding his dental practice with: "Objection: Corporation property has no relevance as to any monthly income of the Respondent and is protected in Bankruptcy proceeding." Mother's Exhibit 2. On October 2, 2014, the trial court ordered the parties to exchange financial declaration forms by December 22. As of the hearing in June 2015, Mother still had not received Father's forms.

[6] Father's Chapter 13 bankruptcy petition listed a monthly income of $13,178.39, or $158,140.68 per year.

[13] Our review reveals no abuse of discretion by the trial court. The Indiana Child Support Guidelines provide a very broad definition of income which includes actual income from employment and imputed income from "in-kind" benefits. *See* Ind. Child Support Guideline 3(A)(1). Moreover, the guidelines specifically state "in-kind payments received by a parent in the course of employment, self-employment, or operation of a business should be counted as income if they are significant and reduce personal living expenses." Child Supp. G. 3(A)(2). Here, Mother attempted to ascertain whether Father received more income from his business interests than he reported on his tax returns. All of Mother's discovery requests granted by the trial court were related to Father's personal finances and any business he owned since 2007. The granted requests were relevant to Father's total income and reasonably calculated to lead to the discovery of admissible evidence.

[14] Nor did the trial court abuse its discretion in denying Father's discovery requests. The central issue in this child support modification was the parties' income. Father requested information pertaining to Mother's employer and how Mother spent her money, which the trial court denied as irrelevant. The trial court's rulings on the parties' motions to compel were not against the logic and circumstances of the case.

## III. Contempt

[15] Father claims the trial court abused its discretion in finding him in contempt of court for failure to pay child support. The determination of whether a party is

in contempt of court is a matter within the trial court's discretion and its decision will only be reversed for an abuse of discretion. *Piercey v. Piercey*, 727 N.E.2d 26, 31 (Ind. Ct. App. 2000). A trial court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before it or is contrary to law. *Id.* Contempt of court "involves disobedience of a court which undermines the court's authority, justice and dignity." *Henderson v. Henderson*, 919 N.E.2d 1207, 1210 (Ind. Ct. App. 2010) (citation omitted). To hold a party in contempt for violation of a court order, the trial court must find the party acted with willful disobedience. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1260 (Ind. Ct. App. 2010).

[16] Initially, we note Father's failure to follow Indiana Rule of Appellate Procedure 46(A)(8)(a) concerning the alleged error. Father fails to cite to a single authority or statute supporting his position. Further, the absence of cogent argument operates as a waiver of the issue on appeal. *Decker v. State*, 19 N.E.3d 368, 377-78 (Ind. Ct. App. 2014), *trans. denied*.

[17] Notwithstanding such waiver, Father argues the trial court erred in holding him in contempt. Specifically, he argues the contempt petition was improper because he filed for Chapter 13 bankruptcy and was protected by the automatic stay pursuant to 11 U.S.C. § 362(a). *See Reich v. Reich*, 605 N.E.2d 1178, 1182-83 (Ind. Ct. App. 1993) (reversing a finding of contempt where the automatic stay remained in effect). We reiterate Father's bankruptcy was dismissed on May 27, 2015. The trial court found Father in contempt on July 15, 2015. Thus, Father was no longer involved in bankruptcy proceedings and the

automatic stay was no longer in effect. *See* 11 U.S.C. § 362(c)(2)(B). Moreover, Father had not been paying Mother child support well in advance of the bankruptcy proceedings and owed her over $80,000 in arrearage. Presumably, the State could have filed its petition for contempt before the bankruptcy proceedings began. We cannot say the trial court abused its discretion in finding Father in contempt of court.[7]

# IV.  Child Support

[18]     We interpret Father's final issue as arguing his child support order should be enforced in accordance with Illinois law. He asserts because he has children in Illinois and the Illinois child support orders were issued prior to the Indiana child support order, Illinois law applies. To support this argument, Father cites to Indiana's version of the Uniform Interstate Family Support Act ("UIFSA").[8] Father is incorrect. UIFSA applies when a party seeks to enforce or modify a child support order in a state other than the state in which it originated. *See Hamilton v. Hamilton*, 914 N.E.2d 747, 751-52 (Ind. 2009) (explaining the development and purpose of UIFSA). His child who is the subject of this

---

[7] We note the State filed its petition for contempt on March 24, 2015, while Father was still involved in bankruptcy proceedings. However, other than making conclusory statements that this was in error, Father's arguments relating to the trial court's finding of contempt contain zero citations to any authority or statute that would lead us to conclude the trial court abused its discretion. If we were to construct arguments on his behalf, "we would be forced to abdicate our role as an impartial tribunal and would instead become an advocate for one of the parties. This, clearly, we cannot do." *Shepherd v. Truex*, 819 N.E.2d 457, 463 (Ind. Ct. App. 2004).

[8] Father cites to Indiana Code section 31-18-2-7. This statute was repealed, effective July 1, 2015. We believe Father meant to reference Indiana Code section 31-18.5-2-7, where UIFSA has been re-codified. Regardless, UIFSA is inapplicable to this case.

litigation was born in Indiana and the 2005 child support order originated in Indiana. The fact Father has subsequent children in Illinois may be relevant for adjusting his weekly gross income, but it does not require an Indiana court to apply Illinois law.

# Conclusion

[19] The trial court did not abuse its discretion, and we therefore affirm.

[20] Affirmed.

Mathias, J., and Brown, J., concur.